UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

PAMELA DACKIW,

      Plaintiff,

v.

COMMISSIONER OF SOCIAL
SECURITY,

      Defendant.

Case No. 2:20-cv-11990
District Judge Arthur J. Tarnow
Magistrate Judge Kimberly G. Altman

_____/

## REPORT AND RECOMMENDATION ON CROSS MOTIONS FOR SUMMARY JUDGMENT

### I.     Introduction

This is a social security case.  Plaintiff Pamela Dackiw (Dackiw) brings this action under 42 U.S.C. § 405(g), challenging the final decision of Defendant Commissioner of Social Security (Commissioner) denying her application for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) under the Social Security Act (the Act).  Both parties have filed summary judgment motions (ECF Nos. 11, 13), which have been referred to the undersigned for a Report and Recommendation under 28 U.S.C. § 636(b)(1)(B).

For the reasons set forth below, substantial evidence supports the Administrative Law Judge's (ALJ) conclusion that Dackiw is not disabled under

1

the Act.  Accordingly, it is RECOMMENDED that the Commissioner's Motion for

Summary Judgment (ECF No. 13) be GRANTED, Dackiw's Motion for Summary

Judgment (ECF No. 11) be DENIED, and the ALJ's decision be AFFIRMED.

## II.    Background

### A.    Procedural History

Dackiw was 57 years old at the time of her alleged onset date of September

19, 2017.  (ECF No. 9, PageID.118).  She previously worked as a slot assistant

shift manager and a slot attendant for a casino.  (*Id*., PageID.267).  She alleged

disability due to major depressive disorder, anxiety with panic attacks, loss of

concentration, crying spells, being overwhelmed by simple tasks, difficulty

sleeping, chronic fatigue, memory loss, racing thoughts, and hypertension.  (*Id*.,

PageID.119).

After Dackiw's application was denied at the initial level on March 27, 2018

(*Id*., PageID.118-132), she timely requested an administrative hearing, which was

held on May 17, 2019, before the ALJ.  (*Id*., PageID.72-102).  Dackiw testified at

the hearing, as did a vocational expert (VE).  (*Id*.).

Dackiw testified that that she lived with her ex-husband.  (*Id*., PageID.79).

She had a driver's license and drove "minimally" because she had concentrational

issues that caused problems when driving.  (*Id*., PageID.80).  Dackiw had a high

school education and had worked for Greektown Casino for the proceeding 15

years.  (*Id.*).  Her most recent role was as a slot assistant shift manager, which required her to supervise staff, resolve customer disputes, and perform other duties as needed.  (*Id.*, PageID.80-82).  She "was on [her] feet walking the floor" during her shift, but never lifted more than 20 pounds.  (*Id.*, PageID.82).

Dackiw was unable to work because her bipolar disorder and anxiety had progressed "to the point where [she] [was] overwhelmed."  (*Id.*, PageID.83).  Her concentration was "poor," and she suffered from "frequent crying spells" and "agitation."  (*Id.*).  She had crying spells a couple of times each week while at work.  (*Id.*, PageID.95).  Dackiw "missed a great deal of time" at work and had to use Family Medical Leave Act (FMLA) time.  (*Id.*, PageID.96).  She felt like she was not being as productive as she used to be at work.  (*Id.*).  Dackiw also suffered from loss of memory and focus, and was overwhelmed by tasks.  (*Id.*, PageID.97-98).

Dackiw had been taking medication for years to manage her mental health issues, but did not feel the medication was totally effective.  (*Id.*, PageID.85).  The medication "[took] the edge off of the depression."  (*Id.*).  Side effects from the medicine included dry mouth, difficulty sleeping, drowsiness, and constipation.  (*Id.*, PageID.86, 91).  Dackiw napped every day.  (*Id.*, PageID.86-87).  She believed her mental health was getting worse.  (*Id.*, PageID.93).

Dackiw struggled with motivation. (*Id.*, PageID.89). As a result, she stopped "grooming [herself] properly." (*Id.*). She did not take regular showers or do her hair. (*Id.*). Dackiw had "gained a lot of weight" because she ate "a lot of junk food." (*Id.*, PageID.90). Her ex-husband typically cooked, but she was able to prepare breakfast for herself in the morning. (*Id.*, PageID.90-91).

Dackiw stopped drinking, apart from the occasional beer, approximately one year prior. (*Id.*, PageID.83-84). She had been "binge drinking" following the death of her father in March of 2015. (*Id.*, PageID.84, 95). His death had sent her into a "tailspin." (*Id.*, PageID.84).

Dackiw got a dog in July who was "needy." (*Id.*, PageID.88). She played with the dog and took her on walks. (*Id.*). Since her ex-husband's retirement in March, he had taken over as the primary dog walker. (*Id.*). Before his retirement, however, Dackiw walked the dog both in the morning and early afternoon. (*Id.*, PageID.89).

Dackiw typically sat in a chair or lay in bed most of the day. (*Id.*, PageID.92). She also kept in contact with her brother and talked to her sister a couple of times each week. (*Id.*). Dackiw did the dishes in stages. (*Id.*). For example, she might empty the top rack of the dishwasher, take a break, and then empty the bottom rack. (*Id.*). Dackiw did not have "much laundry," but she did it herself. (*Id.*, PageID.92-93). He ex-husband grocery shopped for the household.

(*Id*., PageID.93).  Dackiw did not have "any desire to get [herself] prettied up and go . . . anywhere."  (*Id*., PageID.94).  She posted on Facebook once or twice each week and also posted on Pinterest.  (*Id*., PageID.97).  She no longer went to estate or garage sales.  (*Id*.).

On July 31, 2019, the ALJ issued a written decision finding that Dackiw was not disabled.  (*Id*., PageID.51-63).  On June 1, 2020, the Appeals Council denied review, making the ALJ's decision the final decision of the Commissioner.  (*Id*., PageID.33-38).  Dackiw timely filed for judicial review of the final decision.  (ECF No. 1).

### B.    Medical Evidence

The medical evidence consists mainly of treatment records from Arab American Chaldean Council, where Dackiw began treatment in June of 2017.

 On June 14, 2017, Heba Osman, a LMSW with Arab American Chaldean Council, performed a psychosocial assessment of Dackiw.  (ECF No. 9, PageID.395).  Dackiw reported a history of depression and anxiety dating back 30 years and reported that her main concerns were focusing at work and dealing with family conflict.  (*Id*., PageID.396).  She was previously hospitalized in January 2016 and February 2017[1] for psychiatric reasons.  (*Id*.).  Dackiw had struggled

---

[1] Dackiw's February 2017 hospitalization predates her alleged onset date of September 19, 2017, by approximately seven months.  As such, her hospital records are not summarized in the medical evidence section of this report.  *See*

with a gambling addiction for 10 years and stated that she continued to go to the casino, but would only use free play, rather than spend money.  (*Id*.).

Dackiw was prescribed Clonazepam, Cymbalta, and Lithium.  (*Id*., PageID.401).  Osman reported that Dackiw had appropriate appearance, attitude, and psychomotor activity.  (*Id*., PageID.404-405).  Her concentration was intact and her fund of knowledge was average.  (*Id*., PageID.404-405).  She had good short- and long-term memory.  (*Id*., PageID.405).  Her perception was unremarkable, speech was normal, and hygiene/grooming was good.  (*Id*.).  Dackiw's diagnoses were bipolar disorder, pathological gambling, and alcohol abuse uncomplicated.  (*Id*., PageID.406).

From June 30, 2017 through February 20, 2019, Dackiw received psychiatric care from Dr. Luay Haddad, a psychiatrist at Arab American Chaldean Council.  (ECF No. 9, PageID.355-394, 575-719).

On June 30, 2017, Dr. Haddad performed a psychiatric evaluation.  (*Id*., PageID.362).  Dr. Haddad reported that Dackiw was on time for the evaluation, was appropriately hygienic and groomed, and was in a "calm mood [with] appropriate affect."  (*Id*.).  Dackiw told Dr. Haddad that she would be returning to

---

*Lowery v. Comm'r of Soc. Sec.*, 886 F. Supp. 2d 700, 716 n.8 (S.D. Ohio 2012) ("In determining whether a Plaintiff is 'disabled,' the ALJ generally only considers evidence from the alleged disability onset date through the date last insured."). The hospital records can be found at ECF No. 9, PageID.417-429.

work the next day.  (*Id*.).  Dackiw denied medication side effects as well as suicidal/homicidal thoughts.  (*Id*.).  She had been "drinking less alcohol lately." (*Id*.).  Her prescribed psychotropic medications were Cymbalta, Clonazepam, Lithium.  (*Id*., PageID.363-363).

Dr. Haddad reported that Dackiw's appearance, attitude, concentration, insight, memory, mood/affect, psychomotor activity, speech, hygiene/grooming, and thought content/process were all appropriate.  (*Id*., PageID.367-369).  Her judgment was good and her fund of knowledge was average.  (*Id*., PageID.368). Her diagnoses were bipolar disorder, pathological gambling, and alcohol abuse uncomplicated.  (*Id*., PageID.369).

On January 3, 2018, Dr. Haddad wrote a letter indicating that Dackiw was receiving psychiatric and therapeutic services because she "suffer[ed] from severe and persistent mental illness and [was] diagnosed with bipolar 1 disorder."  (*Id*., PageID.408).  Dr. Haddad felt that Dackiw was "currently not stable in her mental health symptoms to maintain employment."  (*Id*.).

On January 11, 2018, Dr. Haddad reported that Dackiw was "in [a] depressed mood [with] full range affect."  (*Id*., PageID.355).  Dr. Haddad noted that Dackiw reported no medication side effects and "displayed fair hygiene/grooming."  (*Id*.).  Dr. Haddad counseled Dackiw to stop drinking alcohol and recommended that she attend Alcoholics Anonymous (AA).  (*Id*.).  Dackiw,

however, indicated she had refused to attend AA. (*Id*.). Dr. Haddad further noted that Dackiw had a dramatic appearance and an argumentative attitude. (*Id*., PageID.355-356). Dackiw was easily distracted, had an emotional insight, limited judgment, and an average fund of knowledge. (*Id*., PageID.356). She was prescribed Abilify, Atenolol, Clonazepam, and Cymbalta. (*Id*., PageID.360-361).

Dr. Haddad noted on January 25, 2018, that Dackiw was "in [a] stable mood [with] flat affect" and denied medication side effects. (*Id*., PageID.713). She "displayed fair hygiene/grooming." (*Id*.). Her appearance was dramatic and she had poor concentration." (*Id*., PageID.713-714). Dr. Haddad reported that Dackiw had emotional insight, good judgment, and an average fund of knowledge. (*Id*., PageID.714). Her mood/affect was fearful and psychomotor activity was isolative. (*Id*.). Dackiw's prescribed medications were Abilify, Atenolol, Clonazepam, and Cymbalta. (*Id*., PageID.718-719).

Dr. Haddad's March 2, 2018 notes state that Dackiw was "in [a] depressed mood [with] restricted range affect." (*Id*., PageID.706). Dackiw denied any medication side effects. (*Id*.). Her appearance was dramatic and she was easily distracted. (*Id*., PageID.706-707). Dackiw's insight was emotional with good judgment, a depressed mood and affect, and reduced psychomotor activity. (*Id*., PageID.707). She was prescribed Atenolol and Vivactil. (*Id*., PageID.711-712).

8

On March 15, 2018, Dr. Haddad's notes indicate that Dackiw reported the new medications made her more depressed. (*Id.*, PageID.699). She was "in [an] irritated mood [with] flat affect." (*Id.*). Her appearance was dramatic and she was easily distracted. (*Id.*, PageID.699-700). Dackiw had emotional insight, good judgment, and an average fund of knowledge. (*Id.*, PageID.700). Dr. Haddad reported that Dackiw's mood/affect was depressed and psychomotor activity was isolative. (*Id.*). Dackiw's prescribed medications were Atenolol, Clonazepam, and Prevacid. (*Id.*, PageID.704-705).

Dr. Haddad's March 29, 2018 notes indicate that Dackiw was "in [a] calm mood and appropriate affect" with "fair grooming and fair hygiene." (*Id.*, PageID.692). Dackiw reported no mood swings and no medication side effects. (*Id.*). Dr. Haddad noted that her appearance, concentration, insight, memory, mood/affect, perception, psychomotor activity, hygiene/grooming, and thought content/process were all appropriate. (*Id.*, PageID.692-693). She had good judgment and an average fund of knowledge." (*Id.*, PageID.693). She was prescribed Atenolol, Clonazepam, Prevacid, and Trintellix. (*Id.*, PageID.697-698).

Dr. Haddad noted on April 11, 2018, that Dackiw was "in [an] irritable mood [with] sad affect" and that she reported no medication side effects. (*Id.*, PageID.685). Her appearance was guarded and she was easily distracted. (*Id.*, PageID.685-686). Dackiw had an emotional insight, good judgment, and ritualistic

9

psychomotor activity. (*Id*., PageID.686). Her fund of knowledge was average and mood/affect was anxious. (*Id*.). Dackiw's prescribed medications were Atenolol, Clonazepam, Prevacid, and Trintellix. (*Id*., PageID.690-691).

On April 26, 2018, Dr. Haddad's notes state that Dackiw was "in [a] sad mood [with] depressed affect." (*Id*., PageID.678). She denied racing thoughts and medication side effects. (*Id*.). Her hygiene/grooming was proper. (*Id*.). Dackiw's appearance was dramatic and she was easily distracted. (*Id*., PageID.678-679). Dr. Haddad reported that her insight was emotional, judgment was limited, and psychomotor activity was restless. (*Id*., PageID.679). She had an average fund of knowledge. (*Id*.). Dackiw was prescribed Atenolol, Clonazepam, Prevacid, and Trintellix. (*Id*., PageID.683-684).

Dr. Haddad noted on May 16, 2018, that Dackiw was "in [a] stable mood [with] full range affect" and that she "displayed proper hygiene/grooming." (*Id*., PageID.671). Her appearance, attitude, concentration, insight, memory, mood/affect, perception, psychomotor activity, hygiene/grooming, and thought content/process were all appropriate. (*Id*., PageID.671-672). Dackiw's judgment was good and her fund of knowledge was average. (*Id*., PageID.672). She was prescribed Atenolol, Clonazepam, Prevacid, and Trintellix. (*Id*., PageID.676-677).

On June 13, 2018, Dr. Haddad's notes indicate that since stopping Trintellix Dackiw had begun having suicidal ideations. (*Id*., PageID.664). She was "in [a]

10

sad mood [with] depressed affect" and reported racing thoughts. (*Id*.). Dr. Haddad reports that her appearance was dramatic, her judgment was good, and her fund of knowledge was average. (*Id*., PageID.664-665). Dackiw's prescribed medications were Atenolol, Clonazepam, Prevacid, and Trintellix. (*Id*., PageID.669-670).

Dr. Haddad noted on June 21, 2018, that Dackiw was "in [a] sad mood [with] depressed affect" and that she reported anger and stress. (*Id*., PageID.657). However, Dackiw denied substance abuse and medication side effects. (*Id*.). Her appearance was dramatic, insight was emotional, mood/affect was angry, and psychomotor activity was isolative. (*Id*., PageID.657-658). Dackiw exhibited good judgment and an average fund of knowledge." (*Id*., PageID.658). Her prescriptions were Atenolol, Clonazepam, Prevacid, and Trintellix. (*Id*., PageID.662-663).

Dr. Haddad's notes from July 6, 2018, indicate that Dackiw was "in [a] sad mood [with] depressed affect." (*Id*., PageID.649-650). She "displayed proper hygiene/grooming and denied having any racing thoughts at this time." (*Id*., PageID.650). She also denied medication side effects. (*Id*.). Dackiw's appearance was dramatic, her insight was emotional, and her psychomotor activity was isolative. (*Id*., PageID.650-651). Dr. Haddad reported that Dackiw had good judgment and an average fund of knowledge. (*Id*., PageID.651). Dackiw's

prescribed medications were Atenolol, Clonazepam, Prevacid, and Trintellix.  (*Id*.,

PageID.655-656).

Dr. Haddad noted on July 19, 2018, that Dackiw was less depressed since he

increased her medications.  (*Id*., PageID.641).  She was "in [a] calm mood [with]

appropriate affect" and denied substance abuse.  (*Id*.).  Dr. Haddad noted that

Dackiw's appearance, concentration, insight, memory, mood/affect, perception,

psychomotor activity, hygiene/grooming, and thought content/process were all

appropriate.  (*Id*., PageID.641-643).  Her judgment was good and her fund of

knowledge was average.  (*Id*., PageID.642).  She was prescribed Atenolol,

Clonazepam, Prevacid, and Trintellix.  (*Id*., PageID.647).

On August 2, 2018, Dr. Haddad stated that Dackiw was "in [a] stable mood

[with] brighter affect and she was less anxious."  (*Id*., PageID.633).  Dackiw

denied medication side effects and reported that the medications were helping to

reduce her anxiety and depression.  (*Id*.).  She also denied alcohol use and

"displayed proper hygiene/grooming."  (*Id*.).  Dackiw's appearance indicated

decreased psychomotor activity, her judgment was good, and her fund of

knowledge was average.  (*Id*., PageID.633-634).  Additionally, her mood/affect

was anxious.  (*Id*., PageID.634).  Dackiw was currently prescribed Atenolol,

Clonazepam, Prevacid, and Trintellix.  (*Id*., PageID.639).

Dr. Haddad noted on August 30, 2018, that Dackiw had a "calm mood [with] appropriate affect." (*Id*., PageID.626). Dackiw denied medication side effects and alcohol use. (*Id*.). Her appearance was appropriate as was her attitude, concentration, insight, memory, perception, psychomotor activity, hygiene/grooming, and thought content/process. (*Id*., PageID.626-628). Dackiw exhibited good judgment and an average fund of knowledge. (*Id*., PageID.627). Her prescriptions were Atenolol, Clonazepam, Prevacid, and Trintellix. (*Id*., PageID.632).

At a September 27, 2018 medication review with Dr. Haddad, Dackiw appeared "in [a] calm mood [with] appropriate affect," denying medication side effects and substance abuse. (*Id*., PageID.618). She also "displayed proper hygiene/grooming." (*Id*.). Dr. Haddad noted that Dackiw's appearance, attitude, concentration, insight, memory, mood/affect, perception, psychomotor activity, hygiene/grooming, and thought content/process were all appropriate. (*Id*., PageID.618-620). Additionally, her judgement was good and fund of knowledge was average. (*Id*., PageID.619). Dackiw's prescriptions were Atenolol, Clonazepam, Prevacid, and Trintellix. (*Id*., PageID.624).

Dr. Haddad's medication review notes for October 25, 2018, indicate that Dackiw had a "calm mood [and] sad affect." (*Id*., PageID.609-610). Dackiw relayed that wanted to find a job and denied any medication side effects or

13

substance abuse.  (*Id*., PageID.610).  Her appearance suggested decreased

psychomotor activity and she was easily distracted."  (*Id*., PageID.610-611).  She

exhibited emotional insight, good judgment, an average fund of knowledge, and an

anxious mood/affect.  (*Id*., PageID.611).  Her medications were Atenolol,

Clonazepam, Prevacid, and Trintellix.  (*Id*., PageID.616).

On November 29, 2018, Dr. Haddad noted that Dackiw was "in [a] calm

mood [with] full range affect."  (*Id*., PageID.600).  She reported no medication

side effects.  (*Id*.).  Dackiw's appearance, attitude, concentration, insight, memory,

mood/affect, perceptions, psychomotor ability, hygiene/grooming, thought

content/process were all appropriate.  (*Id*., PageID.600-602).  Dackiw had good

judgment and an average fund of knowledge.  (*Id*., PageID.601).  She was

prescribed Atenolol, Clonazepam, Prevacid, and Trintellix.  (*Id*., PageID.606).

Dr. Haddad's December 27, 2018 medication review notes indicate that

Dackiw was "in stable mood [with] full range affect."  (*Id*., PageID.592).  Dackiw

denied medication side effects and substance abuse.  (*Id*.).  Dr. Haddad reported

that Dackiw was easily distracted, emotional, and anxious.  (*Id*., PageID.593).  Her

judgment was good and fund of knowledge was average, but her psychomotor

activity was reduced.  (*Id*.).  Dackiw's medications were Atenolol, Clonazepam,

Prevacid, and Trintellix.  (*Id*., PageID.598).

14

Dackiw arrived at her January 24, 2019 medication review with Dr. Haddad "in [a] stressed mood [with] construed range affect." (*Id*., PageID.584). She was struggling financially, but denied medication side effects or substance abuse. (*Id*.). Her appearance was dramatic and she was easily distracted. (*Id*., PageID.584-585). Her insight was emotional, but her judgment was good. (*Id*., PageID.585). Dackiw's fund of knowledge was average and her psychomotor activity was isolative. (*Id*.). Her prescribed medications were Atenolol, Clonazepam, Prevacid, and Trintellix. (*Id*., PageID.590).

Dr. Haddad's February 20, 2019 medication review notes indicate that Dackiw was "in [an] anxious mood [with] restricted range affect." (*Id*., PageID.575-576). She "displayed fair hygiene/grooming and report[ed] no issues with current meds." (*Id*., PageID.576). Dr. Haddad reported her appearance as catatonic, and she was easily distracted and emotional. (*Id*., PageID.576-577). Her judgment was good and her fund of knowledge was average. (*Id*., PageID.577). She was prescribed Atenolol, Clonazepam, Flonase, Prevacid, and Trintellix. (*Id*., PageID.582).

On March 23, 2018, Patricia Madej, Ph.D., L.P. authored a psychiatric/psychological medical report. (*Id*., PageID.410). Dr. Madej's general observations included that Dackiw's "grooming and hygiene were good," that she sometimes spoke in a tearful tone, that she "repeatedly stated [ ] she was

15

overwhelmed," and that "[s]he was cooperative with the overall interview but tended to be vague about her use of alcohol." (*Id*., PageID.411). Dackiw's "[s]elf esteem was poor" and her "affect was sad." (*Id*., PageID.412).

> Dr. Madej's recommendations were as follows:
>
> [Dackiw] presents as having significant deficits in coping strategies that tend to often present as depression. She could benefit from a referral to a peer group therapy program [where] she could learn from peers appropriate and positive coping strategies for dealing with stress and frustration and "being overwhelmed." Additionally, [Dackiw] could benefit from an SA component in her therapy program, if it isn't currently in place. A referral to Gambler's Anonymous for help with her gambling addiction is recommended. She stated that she is not currently gambling because she does not have any money. If this changes it is likely that [she] may return to past habits. A referral to the Michigan Department of Career Development for evaluation and placement in a work training program is recommended.

(*Id*., PageID.413).

Dr. Madej listed Dackiw's diagnoses as alcohol use disorder, gambling disorder, and bipolar I disorder with anxious distress. (*Id*., PageID.413-414). Dackiw's prognosis was "good with medication and therapy." (*Id*., PageID.414). Dackiw was not able to manage benefit funds "due to her history of a gambling disorder." (*Id*.).

On March 27, 2018, the state agency psychologist Edward Czarnecki, Ph.D., evaluated Dackiw's file. (*Id*., PageID.109-114). Dr. Czarnecki determined that Dackiw had the severe impairments of depressive, bipolar and related disorders, substance addiction disorders (alcohol), and anxiety and obsessive-compulsive

16

disorders.  (*Id*., PageID.110).  He found that she had moderate limitations in the

following four areas: (1) understand, remember, or apply information; (2) interact

with others; (3) concentrate, persist, or maintain pace; and (4) adapt or manage

oneself.  (*Id*.).  In regard to the RFC, Dr. Czarnecki explained:

> [Dackiw] has outpatient treatment for Bipolar, Alcohol Use and
> Gambling.  As of 06/17, she was calm and symptoms had improved.
> The most recent records indicate she remains depressed but sleep,
> appetite and energy are normal.  The recent CE [from Dr. Madej] finds
> Bipolar with anxiety, Alcohol Use and Gambling.  [Dackiw] was vague
> about her alcohol use.  She presents with good grooming and hygiene
> and attitude was cooperative.  Her thinking was organized and goal-
> directed with normal speech.  Her mental functions, including memory,
> remain intact.  She reported that she gets along well and has two friends.
> She uses Facebook and likes estate sales, shopping and gardening.  At
> the CE, she reported that she cooks, does laundry and drives.  The more
> limited ADLs reported on the ADL form are not fully consistent with
> or substantiated by the MER.  [Dackiw] may have a mood disorder with
> substance abuse and gabling but the allegations are inconsistent and
> only partially supported.  [Dackiw] retains the mental capacity for
> simple, rote, repetitive tasks with brief, occasional and superficial
> interaction.

(*Id*., PageID.114).

III.    Framework for Disability Determinations (the Five Steps)

Under the Act, DIB is available only for those who have a

"disability."  *See Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007).  The Act

defines "disability" as the "inability to engage in any substantial gainful activity by

reason of any medically determinable physical or mental impairment which can be

expected to result in death or which has lasted or can be expected to last for a

17

continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  The

Commissioner's regulations provide that a disability is to be determined through

the application of a five-step sequential analysis:

> Step One: If the claimant is currently engaged in substantial gainful
> activity, benefits are denied without further analysis.
>
> Step Two: If the claimant does not have a severe impairment or
> combination of impairments that "significantly limits . . . physical or
> mental ability to do basic work activities," benefits are denied without
> further analysis.
>
> Step Three: If the claimant is not performing substantial gainful
> activity, has a severe impairment that is expected to last for at least
> twelve months, and the severe impairment meets or equals one of the
> impairments listed in the regulations, the claimant is conclusively
> presumed to be disabled regardless of age, education, or work
> experience.
>
> Step Four: If the claimant is able to perform his or her past relevant
> work, benefits are denied without further analysis.
>
> Step Five: Even if the claimant is unable to perform his or her past
> relevant work, if other work exists in the national economy that the
> claimant can perform, in view of his or her age, education, and work
> experience, benefits are denied.

*Carpenter v. Comm'r of Soc. Sec.*, No. 08-10279, 2008 WL 4793424, at *4 (E.D.

Mich. Oct. 31, 2008), citing 20 C.F.R. § 404.1520; *see also Heston v. Comm'r of*

*Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001).  "The burden of proof is on the

claimant throughout the first four steps. . . .  If the analysis reaches the fifth step

without a finding that claimant is not disabled, the burden transfers to the

[Commissioner]." *Preslar v. Sec'y of Health & Hum. Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

Following this five-step sequential analysis, the ALJ found that Dackiw was not disabled under the Act.  At Step One, the ALJ found that Dackiw had not engaged in substantial gainful activity since September 19, 2017 (alleged onset date).  (ECF No. 9, PageID.57).  At Step Two, the ALJ found that she had the severe impairments of bipolar disorder, major depressive disorder, generalized anxiety disorder, pathological gambling, and alcohol abuse uncomplicated.  (*Id.*).  At Step Three, the ALJ found that Dackiw's impairments, whether considered alone or in combination, did not meet or medically equal a listed impairment.  (*Id.*, PageID.57-60).

The ALJ then assessed Dackiw's RFC, concluding that she was capable of performing a full range of work, but with the following nonexertional limitations:

> [Dackiw] could perform simple and routine tasks, where there is no production rate pace, meaning it has to be self-paced work and excludes things like work on an assembly line or conveyer belt.  She could work in an environment where she does not have to interact with the public, but occasional and superficial interaction with coworkers and supervisors; with superficial defined as not requiring social interaction, like passing in the hall.

(*Id.*, PageID.60).

At Step Four, the ALJ found that Dackiw was unable to perform any past relevant work.  (*Id.*, PageID.64).  At Step Five, the ALJ determined, based in part

on testimony provided by the VE in response to hypothetical questions, that

Dackiw was capable of performing the jobs of hand packager (150,000 jobs

nationally), bench assembler (300,000 jobs nationally), and light exertional level

inspector (180,000 jobs nationally).  (*Id*., PageID.64-65).  As a result, the ALJ

concluded that Dackiw was not disabled under the Act.  (*Id*., PageID.65).

### IV.    Standard of Review

The District Court has jurisdiction to review the Commissioner's final

administrative decision under 42 U.S.C. § 405(g).  Although the court can examine

portions of the record that were not evaluated by the ALJ, *Walker v. Sec. of Health*

*& Hum. Servs.*, 884 F.2d 241, 245 (6th Cir. 1989), its role is a limited one.  Judicial

review is constrained to deciding whether the ALJ applied the proper legal

standards in making his or her decision, and whether the record contains

substantial evidence supporting that decision.  *Tucker v. Comm'r of Soc. Sec.*, 775

F. App'x 220, 224–25 (6th Cir. 2019)); *see also Bass v. McMahon*, 499 F.3d 506,

509 (6th Cir. 2007) (noting that courts should not retry the case, resolve conflicts

of evidence, or make credibility determinations); *Biestek v. Comm'r of Soc. Sec.*,

880 F.3d 778, 783 (6th Cir. 2017) (same).

An ALJ's factual findings must be supported by "substantial evidence."  42

U.S.C. § 405(g).  The Supreme Court has recently explained what that term means:

> Under the substantial-evidence standard, a court looks to an existing
> administrative record and asks whether it contains sufficient evidence

> to support the agency's factual determinations.   And whatever the
> meaning of substantial in other contexts, the threshold for such
> evidentiary sufficiency is not high.   Substantial evidence, this Court has
> said, is more than a mere scintilla.   It means—and means only—such
> relevant evidence as a reasonable mind might accept as adequate to
> support a conclusion.

*Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal quotations omitted).

In making "substantial evidence" the relevant standard, the law preserves the

judiciary's ability to review decisions by administrative agencies, but it does not

grant courts the right to review the evidence de novo.   *Moruzzi v. Comm'r of Soc.*

*Sec.*, 759 F. App'x 396, 402 (6th Cir. 2018) ("The substantial-evidence standard . .

. presupposes that there is a zone of choice within which the decisionmakers can go

either way, without interference by the courts.") (quoting *Blakley v. Comm'r of*

*Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009)).   An ALJ's factual findings are

therefore subject to multi-tiered review, but those findings are conclusive unless

the record lacks sufficient evidence to support them.   *Biestek*, 139 S. Ct. at 1154.

Although the substantial evidence standard is deferential, it is not trivial. The

Court must " 'take into account whatever in the record fairly detracts from [the]

weight' " of the Commissioner's decision.   *TNS, Inc. v. NLRB*, 296 F.3d 384, 395

(6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487

(1951)).   Nevertheless, "if substantial evidence supports the ALJ's decision, this

Court defers to that finding even if there is substantial evidence in the record that

would have supported an opposite conclusion."   *Blakley v. Comm'r of Soc. Sec.*,

581 F.3d 399, 406 (internal quotations omitted).  Finally, even if the ALJ's

decision meets the substantial evidence standard, "a decision of the Commissioner

will not be upheld where the SSA fails to follow its own regulations and where that

error prejudices a claimant on the merits or deprives the claimant of a substantial

right." *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009)

(internal quotations omitted).

V.    Analysis

Dackiw presents two primary arguments on appeal: (1) the ALJ's evaluation

of her subjective symptoms is not supported by substantial evidence, and (2) the

ALJ erred in her Step Three analysis.  Each argument will be addressed in turn

below.

A.    Subjective Symptoms

Dackiw first argues that the ALJ's evaluations of her subjective symptoms is

not supported by substantial evidence because the ALJ improperly evaluated the

intensity, persistence, and limiting effects of her mental symptoms.  The

Commissioner argues to the contrary.

The Social Security Regulations (SSR) establish a two-step process for

evaluating a claimant's subjective symptoms.  20 C.F.R. §§ 404.1529(a),

416.929(a); SSR 16-3p, 2016 WL 1119029 (Mar. 16, 2016).  Under SSR 16-3p, an

ALJ must analyze the consistency of the claimant's statements with the other

22

record evidence, considering her testimony about pain or other symptoms with the rest of the relevant evidence in the record and factors outlined in SSR 16-3p.  This analysis and the conclusions drawn from it – formerly termed a "credibility" determination – can be disturbed only for a "compelling reason."  *Sims v. Comm'r of Soc. Sec.*, 406 F. App'x 977, 981 (6th Cir. 2011); *see also Dooley v. Comm'r of Soc. Sec.*, 656 F. App'x 113, 119 n.1 (6th Cir. 2016) (explaining that SSR 16-3p merely eliminated "the use of the word 'credibility' . . . to 'clarify that subjective symptom evaluation is not an examination of an individual's character.' ").

The ALJ must first confirm that objective medical evidence of the underlying condition exists, and then determine whether that condition could reasonably be expected to produce the alleged subjective symptom, considering other evidence, including: (1) daily activities; (2) location, duration, frequency, and intensity of the symptom; (3) precipitating and aggravating factors; (4) type, dosage, effectiveness, and side-effect of any medication; (5) treatment, other than medication received; (6) any means used to relieve the symptom; and (7) other factors concerning functional limitations.  20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3); SSR 16-3p.

As a preliminary matter, to the extent that Dackiw argues that the ALJ needed to explicitly address all seven of the above factors, she is incorrect.  "This circuit has consistently held that the seven factors for evaluating pain set forth in

23

*Felisky v. Bowen*, 35 F.3d 1027, 1039 (6th Cir. 1994) must be merely considered by the ALJ, and need not be specifically discussed in the ALJ's decision." *Regan v. Comm'r of Soc. Sec.*, 14-CV-14736, 2015 WL 10567957, at *14 (E.D. Mich. Nov. 17, 2015).

In this case, the ALJ stated that she found "that [Dackiw's] medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [Dackiw's] statements concerning the intensity, persistence and limiting effects of these symptoms is not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." (ECF No. 9, PageID.60-61). Specifically, the ALJ noted that Dackiw's professed degree of mental impairment was undermined by the fact she had not been psychiatrically hospitalized since her alleged onset date. (*Id.*, PageID.61). Dackiw was last hospitalized in February 2017, which was approximately seven months before her alleged onset date. (*Id.*).

The ALJ further determined that Dackiw's subjective symptoms were not supported by Dr. Haddad's treatment records. (*Id.*). First, she noted that Dackiw went from June 2017 until January 2018 without any psychiatric treatment. (*Id.*). Then once Dackiw was regularly treating with Dr. Haddad again, she was often noted to be in "a stable or calm mood and full range affect." (*Id.*). While Dackiw's mood often fluctuated, this was "dependent upon life stressors, including

24

her living situation, and money issues." (*Id*).  At Dackiw's final documented visit with Dr. Haddad she "continued to report anxiety; however, she was able to socialize and reported a good support system." (*Id*., PageID.62).

After summarizing Dr. Haddad's treatment records and noting the absence of any additional psychiatric hospitalizations, the ALJ found that the "summary of [Dackiw's] treatment history reflects psychologically based symptoms and limitations, it does not support the degree of severity alleged by [Dackiw]." (*Id*.). Dackiw has not pointed to anything in the record that suggests the ALJ's summarization was incorrect or that her conclusions were unsupported. Accordingly, the undersigned finds that the ALJ's consideration of Dackiw's subjective symptoms is supported by substantial evidence.

Moreover, Dackiw faults the ALJ for not fully crediting Dr. Haddad's opinions.  Although she does not specifically articulate a persuasiveness argument, the undersigned has considered whether the ALJ erred in her persuasiveness analysis of Dr. Haddad's opinions for the sake of completeness.

Under new regulations, specifically 20 C.F.R. § 404.1520c(b), the ALJ must articulate "how persuasive [she] find[s] all of the medical opinions and all of the prior administrative medical findings in [the claimant's] case record."  The ALJ evaluates the persuasiveness of the medical opinions and prior administrative medical findings by utilizing the following five factors: (1) supportability; (2)

consistency; (3) relationship with the claimant; (4) specialization; and (5) other factors. § 404.1520c(c). Supportability and consistency are the most important factors and the ALJ must explain how she considered these factors in her decision. § 404.1520c(b)(2).

In this case, Dr. Haddad offered two formal opinions in addition to his voluminous treatment records. On January 3, 2018, Dr. Haddad authored a letter indicating that Dackiw was receiving psychiatric and therapeutic services because she "suffer[ed] from severe and persistent mental illness and [was] diagnosed with bipolar 1 disorder." (ECF No. 9, PageID.408). Dr. Haddad felt that Dackiw was "currently not stable in her mental health symptoms to maintain employment." (*Id.*). Even though the ALJ noted that Dr. Haddad was Dackiw's psychiatrist, she did not find this opinion persuasive for two key reasons: (1) the letter was written after a six-month lapse in treatment, and (2) the letter was inconsistent with Dr. Haddad's own treatment records. (*Id.*, PageID.62). The ALJ noted that the records indicated that, "[d]espite her lapse in treatment, [Dackiw] presented with fair hygiene and grooming, and normal sleep, appetite, and energy." (*Id.*). In sum, the ALJ considered (1) whether Dr. Haddad's opinion was well supported, and (2) whether it was consistent with Dr. Haddad's own treatment records. After a review of the records, she found that it was neither well supported nor consistent with the treatment records. Accordingly, her decision to find the opinion

unpersuasive followed the relevant regulations and is supported by substantial evidence.

The second of Dr. Haddad's opinions was a form medical examination report completed on January 18, 2018.  (*Id*., PageID.372-374).  Dr. Haddad crossed out most of the sections on the form and only indicated that Dackiw had mental limitations in sustained concentration, memory, and social interaction.  (*Id*., PageID.374).  He did not note the severity of these limitations.  (*Id*.).  Nonetheless, the ALJ found that the opinion was "persuasive as it [was] consistent with [Dackiw's] testimony and the record, and supported the [ ] residual functional capacity."  (*Id*., PageID.62).  In finding the opinion persuasive, the ALJ appears to have considered its consistency with the rest of the record in addition to the fact that Dr. Haddad was Dackiw's treating psychiatrist.  Accordingly, the ALJ followed the relevant regulations when considering this opinion.

Overall, the ALJ's evaluation of both Dackiw's subjective symptoms and Dr. Haddad's two opinions were supported by substantial evidence and should not be disturbed by the Court.

### B.    Step Three

Dackiw also argues that the ALJ improperly determined that her impairments did not medically equal Listings 12.04 or 12.06.  The Commissioner argues that the ALJ's Step Three determinations were correct.

At Step Three, the ALJ considers a claimant's impairments and determines whether an impairment meets or equals a listed impairment or whether the combination of impairments equals a listed impairment. 20 C.F.R. § 404.1520(a)(4)(iii). A listed impairment is considered "to be severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience." 20 C.F.R. § 404.1525(a). If a claimant meets or equals the criteria of a listed impairment, she will be found disabled at Step Three. 20 C.F.R. § 404.1520(a)(4)(iii). In addition to the diagnostic criteria in part A, Dackiw's impairments must also demonstrate the criteria in either paragraph B or C to meet or equal Listing 12.04 or 12.06. 20 C.F.R. Pt. 404, subpt. P, app. 1 § 12.00(A)(2). Dackiw specifically argues that she meets the criteria in paragraph B.

The assessment of the four areas of functioning (the paragraph B criteria) evaluates how a mental impairment limits a claimant's functioning. 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.00(A)(2)(b). The four areas that make up the paragraph B criteria are (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentration, persistence, or maintaining pace; and (4) adapting or managing oneself. *Id*. To satisfy the paragraph B criteria, the claimant's mental disorder must result in an "extreme" limitation of one, or a "marked" limitation of two, of the four areas of mental functioning. *Id*. A marked

28

limitation reflects that an individual's functioning in that area is seriously limited and an individual is unable to function in an area with an extreme limitation.  20 C.F.R. pt. 404, subpt. P, app. 1, § 12.00(F)(2)(d)-(e).

Here, the ALJ determined that Dackiw experienced a moderate limitation in each of the four areas.  (ECF No. 9, PageID.58-59).  Dackiw's argument appears to boil down to the claim that if the ALJ had appropriately considered the evidence from Dr. Haddad and Dackiw herself then she would have found at least a marked limitation in each of the four areas of functioning.

Dackiw's argument regarding area one—understanding, remembering, or applying information—is that the ALJ failed to qualify her abilities "with the limitations supported by substantial evidence and in so doing paint[ed] an unfair and inaccurate picture of [Dackiw's] abilities and limitations."  (ECF No. 11, PageID.748).  In assessing Dackiw's limitations in understanding, remembering, and applying information, the ALJ noted that Dackiw testified "she could prepare meals, pay bills, go to doctor's appointments, take medications, shop, drive, and play games."  (ECF No. 9, PageID.58).  Additionally, the ALJ found that "the record shows that [Dackiw] was able to provide information about her health, describe her prior work history, follow instructions from healthcare providers, comply with treatment outside of a doctor's office or hospital, respond to questions

29

from medical providers, and there is [not] any mention of any issues with claimant's short- or long-term memory." (*Id*.).

The ALJ's assessment is supported by the undersigned's review of the record. Dackiw testified that she prepared herself breakfast every day and was able to adequately respond to questioning at the hearing. All of Dr. Haddad's treatment records indicate that Dackiw had appropriate short- and long-term memory. Dackiw's arguments that others often drove her or that her ex-husband grocery shopped and cooked lunch and dinner do not demonstrate that she had more than a moderate limitation in area one.

Dackiw's argument regarding area two—interacting with others—is that "she lacks the motivation to get out of the house and see anyone, even her brother and sister." (ECF No. 11, PageID.749). The ALJ found that Dackiw had moderate limitations in this area because of her testimony that "she has difficulty engaging in social activities, getting along with others, and spending time in crowds." (ECF No. 9, PageID.58-59). However, the ALJ also noted that Dackiw was able to get along with others, including friends, family, and medical providers, and that medical providers described her as "pleasant and cooperative." (*Id*., PageID.59).

The ALJ's assessment finds support in the record. While Dackiw did report she struggled socially, she nevertheless was able to live with her ex-husband and communicate multiple times each week with her brother and sister. Additionally,

30

in Dr. Haddad's February 2019 notes he indicates that Dackiw was socializing and reported having a good support system.  (ECF No. 9, PageID.576).  Accordingly, the ALJ fairly balanced Dackiw's testimony with the rest of the record evidence and concluded she had a moderate limitation in interacting with others.

Dackiw's argument regarding area three—concentration, persistence, or maintaining pace—is that the ALJ's review "amounts to an inconsistent summary of the real record by way or multiple pieces of record evidence, and fails to find support in substantial evidence."  (ECF No. 11, PageID.749-750).  The ALJ found a moderate limitation in this area, noting that "[w]hile Dr. Haddad noted [Dackiw] occasionally had times of being easily distracted concentration, more frequently he indicated she had appropriate concentration."  (ECF No. 9, PageID.59).  Further, she noted that despite Dackiw's testimony that she struggled in this area, Dackiw testified that "she is also able to drive, prepare meals, watch TV, play games, manage funds, use the internet, and handle her own medical care."  (*Id.*).

A review of Dr. Haddad's records demonstrates that he most frequently rated Dackiw's concentration as appropriate.  Additionally, Dackiw provided inconsistent testimony in this area.  While she testified that she could not concentrate on work and feared losing her concentration driving, she did not seem to have concentrational limits when it came to leisure activities.  Overall,

31

substantial evidence supports the ALJ's conclusion that Dackiw had moderate limitations in this area.

Dackiw's argument regarding area four—adapting or managing oneself—is that the ALJ failed to consider evidence that detracted from her finding such as Dackiw's reports that she did not dress, bathe, care for her hair, or shave because of her depression and trouble concentrating. (ECF No. 11, PageID.750). The ALJ found that Dackiw had moderate limitations in this area because she testified that "she has difficulties managing her mood," yet providers noted she had "appropriate grooming and hygiene and no problem getting along with providers and staff." (ECF No. 9, PageID.59). Additionally, the ALJ noted that Dackiw could handle her self-care and grooming as well as care for pets. (*Id*.).

The record supports the ALJ's finding of moderate limitations in Dackiw's ability to adapt or manage herself. Dackiw testified that she cared for her dog every day. Additionally, while Dackiw did testify that she struggled to shower and do her hair, Dr. Haddad's treatment records indicate that Dackiw always had either fair or proper grooming. Thus, the ALJ's determination is supported by substantial evidence.

Overall, it is clear that Dackiw has limitations in each of the four areas of functioning. However, the ALJ supported her findings of only moderate limitations with citation to the record and the findings are supported by substantial

evidence.  The fact that portions of the evidence could support a finding of greater

psychological limitation is of no import.

### C.    Additional Arguments

Throughout her brief, Dackiw appears to raise a number of other arguments,

all of which are underdeveloped.  As a preliminary manner, the undersigned notes

that "issues adverted to in a perfunctory manner, unaccompanied by some effort at

developed argumentation, are deemed waived.  It is not sufficient for a party to

mention a possible argument in the most skeletal way, leaving the court to . . . put

flesh on its bones." *McPherson v. Kelsey*, 125 F.3d 989, 995-996 (6th Cir. 1997)

(internal quotation marks and citations omitted).

For instance, Dackiw states that she "objects to the RFC assessed by the ALJ

as well as the VE testimony in this case as the one non-disabling hypothetical

(hypothetical one) posed to the VE, which is the one the ALJ seems to adopt in her

decision, do not match, and the ALJ fails to reconcile this inconsistency neither

during the hearing nor in her decision; an accurate review of the hearing transcript

confirms the ALJ asked the VE to assume, among other limitations addressed

herein, that the hypothetical individual would require 'no production rate or self-

paced work' and that the work also 'has to be self-paced work.' " (ECF No. 11,

PageID.747 (citing ECF No. 9, PageID.100)).  Dackiw does not explain what

additional limitations should have been included in the RFC.  Her objection

appears to be limited to complaining that the RFC and hypothetical one "do not match." This argument is unavailing.

The ALJ asked the VE to assume an individual was limited in part to work where "there is no production rate or self-paced work -- it has to be self-paced work such as where the production rate wouldn't be set by an external source. An assembly line or conveyor belt is not acceptable." (ECF No. 9, PageID.100). The RFC similarly included a limitation "where there is no production rate pace, meaning it has to be self-paced work and excludes things like work on an assembly line or conveyor belt." (*Id*., PageID.60). While the ALJ did misspeak at first and say, "there is no production rate or self-paced work," she quickly corrected herself and stated, "it has to be self-paced work such as where the production rate wouldn't be set by an external source." (*Id*., PageID.100). Therefore, contrary to Dackiw's assertion, there is no discrepancy between the posed hypothetical and the RFC; and, accordingly, the VE's testimony regarding the existence of jobs constituted substantial evidence. *See Smith v. Halter*, 307 F.3d 377, 378 (6th Cir. 2001) ("A vocational expert's testimony concerning the availability of suitable work may constitute substantial evidence where the testimony is elicited in response to a hypothetical question that accurately sets forth the plaintiff's physical and mental impairments.").

Dackiw also seems to argue that her impairments meet the paragraph C

criteria and faults the ALJ for "simply stat[ing] that 'paragraph C' criteria are not

met without providing so much as one ounce of record review or analysis in

support and this is so despite the record evidence confirming that there has been, in

fact, a two-year history of documented serious and persistent bipolar disorder that

has required mental health treatment (including therapy, medications, and

psychological support directly following an inpatient psychiatric admission), as

well as a highly structured setting and marginal adjustment."  (ECF No. 11,

PageID.752).

In order to meet the paragraph C criteria, an individual's mental disorder

must be "serious and persistent," meaning there must be a medically documented

history of the existence of the disorder over a period of at least 2 years, and the

evidence shows her disorder satisfies the criteria of both C1 and C2.  20 C.F.R. Pt.

404, subpt. P, app. 1 §12.00(A)(2)(c), (G)(2)(a).  To meet the C1 criteria, the

evidence must show that an individual relies, "on an ongoing basis, upon medical

treatment, mental health therapy, psychosocial support(s), or a highly structured

setting(s), to diminish the symptoms and signs of his mental disorder (see

12.00D)."  20 C.F.R. Pt. 404, subpt. P, app. 1 §12.00(G)(2)(b).  The ALJ will

consider the kind, extent, and frequency of help and support an individual receives

as well as whether treatment reduces the signs and symptoms of a condition that

35

may enable the individual to perform work.  20 C.F.R. Pt. 404, subpt. P, app. 1

§12.00(D)(3)(a), (4).  Further, an individual must also meet the criteria in C2,

which is satisfied when despite diminished symptoms and signs, the individual

achieves only marginal adjustment.  20 C.F.R. Pt. 404, subpt. P, app. 1

§12.00(G)(2)(c).  " 'Marginal adjustment' means that [the individual's] adaptation

to the requirements of daily life is fragile; that is, [she] ha[s] minimal capacity to

adapt to changes in [her] environment or to demands that are not already part of

[her] daily life." *Id*.

Dackiw does not provide an analysis of how she satisfies the criteria of both

C1 and C2.  Accordingly, this argument should be deemed waived.  *McPherson,*

*supra,* 125 F.3d at 995-996.

### D.     In Sum

Ultimately, Dackiw faults the ALJ for not finding her disabled.  While there

may be some evidence in the record to support an inability to work based on her

mental condition, substantial evidence supports the ALJ's finding that Dackiw is

able to perform limited work even with her mental impairments.  Because the

ALJ's determination was within the "zone of choice" accorded to the fact-finder at

the administrative hearing level, it should not be disturbed by this Court.  *Blakley,*

*supra,* 581 F.3d at 406.

### VI.    Conclusion

36

For the reasons set forth above, it is RECOMMENDED that the

Commissioner's motion be GRANTED, Dackiw's motion be DENIED, and the

Commissioner's decision be AFFIRMED.

Dated: January 20, 2022                          s/Kimberly G. Altman
Detroit, Michigan                                KIMBERLY G. ALTMAN
                                                 United States Magistrate Judge

## NOTICE TO PARTIES REGARDING OBJECTIONS

The parties to this action may object to and seek review of this Report and

Recommendation.  Any objections must be filed within 14 days of service, as

provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d).

Failure to file specific objections constitutes a waiver of any further right of

appeal.  *Thomas v. Arn*, 474 U.S. 140, 144 (1985); *Howard v. Sec'y of Health &*

*Hum. Servs.*, 932 F.2d 505, 508 (6th Cir. 1991).  Filing objections that raise some

issues but fail to raise others with specificity will not preserve all the objections a

party might have to this Report and Recommendation.  *Willis v. Sec'y of Health &*

*Hum. Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of*

*Teachers, Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Under Local Rule

72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," and "Objection No.

2," etc.  Any objection must recite precisely the provision of this Report and

Recommendation to which it pertains.  Not later than 14 days after service of an

37

objection, the opposing party may file a concise response proportionate to the

objections in length and complexity.  Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR

72.1(d).  The response must specifically address each issue raised in the objections,

in the same order, and labeled as "Response to Objection No. 1," "Response to

Objection No. 2," etc.  If the Court determines that any objections are without

merit, it may rule without awaiting the response.

## **CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of
record and any unrepresented parties via the Court's ECF System to their
respective email or First Class U.S. mail addresses disclosed on the Notice of
Electronic Filing on January 20, 2022.


                               s/Carolyn Ciesla
                               CAROLYN CIESLA
                               Case Manager

38